[Crim. No. 6118.   Second Dist., Div. Two.   June 23, 1958.]

THE PEOPLE, Respondent, v. DONALD CHARLES ROLLINS, Appellant.

Julius Blank, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant appeals from a judgment convicting him of possession of heroin in violation of section 11500 Health and Safety Code. Through counsel appointed by the court he makes two primary contentions, (1) that the court erred in denying voir dire examination of the arresting officers concerning reliability of their informants and the reasonableness of their belief that a felony had been or was being committed, and (2) that the evidence is insufficient to sustain a finding of guilty on the charge of possession.

■ In considering the latter contention we must accept as established all evidence, inferences and intendments favorable to respondent's case (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]).

Defendant's arrest occurred on July 15, 1957, at about 8:30 p. m., in the apartment of William McCormick in the Strange Apartments at Third and Witmer Streets in the city of Los Angeles. Police Officers Jones and O'Grady had received on July 13th information from a confidential informant, whom they had found reliable, that McCormick was an addict who was selling heroin in that apartment. Officer O'Grady had previously made an arrest upon the basis of information received from this first informant and found him reliable. About a half hour before the arrest on the 15th a second informant told the officers of McCormick's said activities. Fifteen arrests had been made pursuant to information furnished by this person; in 12 cases the result had been conviction for sales of narcotics and in three cases conviction for possession. Of course the officers, both of whom knew of these results (Jones said 12 or 13 cases), considered this informant reliable. Believing that McCormick was then in possession of heroin in that apartment and engaged in selling same, the officers, without obtaining a search warrant, procured a pass key from the landlady and opened the door part way.* O'Grady was in the lead and Jones right behind him. Immediately in front of them and in plain sight was defendant Rollins who was standing; seated on a couch and within their view was McCormick. A chain was on the door; when it stopped the opening the officers informed both occupants that they were under arrest. At once Rollins ran toward a room that the officers thought to be the bathroom and they were correct. They forced the door chain and O'Grady pursued Rollins to the

---

*The State does not and need not contend that the landlady's consent would bind the tenant. (See *People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721].)

bath and grabbed his hand as he reached for narcotics para-phernalia which were on the cover of the toilet,—capsules containing heroin, a spoon, several needles, a fingerstall, etc. Rollins and O'Grady struggled to get possession of this evidence and both came to rest upon the floor with defendant in handcuffs and both of them injured. One capsule of heroin and the rest of the paraphernalia were seized by the officers. McCormick sat on the couch throughout the entire episode. While still in the apartment Rollins was asked if he had purchased the narcotic from McCormick. He said he had not, that he had bought it on Temple Street. Officer O'Grady saw scab formations on defendant's arms such as addicts usually bear, formed by injections of drugs; these were about three to five days old. Defendant's eyes were pinpointed, which fact the witness testified to be an indication that he was a user of narcotics. McCormick was arrested at the same time as Rollins but the charge against him was dismissed at the conclusion of the preliminary hearing.

■ When the officers used the pass key in McCormick's apartment door they had reliable information and believed that he was then and there engaged in selling narcotics. When they saw Rollins run for the bathroom at the mention of arrest they were confirmed in that belief, thinking that he had bought from McCormick. Thus they had reasonable cause for arrest of McCormick and Rollins' speedy and suspicious action afforded them good ground for forcing the door and making an immediate entry in order to forestall destruction of the evidence. (*People* v. *Moore,* 140 Cal.App. 2d 870, 873 [295 P.2d 969].) ■ In these circumstances the fact that they had made no effort to procure a search warrant during the period of two days following the receipt of information from the first informant is immaterial. (*People* v. *Winston,* 46 Cal.2d 151, 162-163 [293 P.2d 40] ; *People* v. *Sayles,* 140 Cal.App.2d 657, 660 [295 P.2d 579].)

■ The fact that the police were on the trail of McCormick at the time of their entrance did not prevent their taking cognizance of any other crime then and there observed by them (*People* v. *Roberts, supra,* 47 Cal.2d 374, 379),—in this instance possession by Rollins who made a desperate effort to take physical possession before police could reach the narcotic and the equipment for administering the same. There was some substance in the spoon and O'Grady testified that he thought that Rollins or McCormick was preparing a

"fix." ■ Possession which violates the statute may be constructive as well as physical. (*People* v. *White,* 50 Cal. 2d 428, 431 [325 P.2d 985] ; *People* v. *Blinks,* 158 Cal. App.2d 264, 267 [322 P.2d 466].) ■ It may be proved by circumstantial as well as direct evidence. (*People* v. *Blinks, supra,* p. 267; *People* v. *Magdaleno,* 158 Cal.App. 2d 48, 50-52 [322 P.2d 89].) ■ Defendant, though denying that he knew of the presence of the narcotic, testified that "[a]s a matter of fact, if I had known that the evidence was in there, I could have destroyed it. That is how close I was to it." His fighting to get his hands on the drug while McCormick sat quietly on the couch, coupled with the other surrounding circumstances and his later admission that he had purchased the capsules, furnished adequate evidence of his own possession.

■ Counsel contends that there was prejudicial error in the court's denial of leave to examine officer Jones on voir dire with respect to the reliability of his informants. He was the first of the police officers to testify. The ruling occurred during the preliminary examination. After the officer had told of the two informants and the statements made by them and had arrived at the fact of using the pass key to open the door, the following occurred: "MR. LEVIE: Your Honor, I wonder if I might take the witness on voir dire as to the reliability of the information that he acted upon. THE COURT: Oh, I think it is a matter of cross examination. Proceed." At the beginning of the trial in the superior court counsel for defendant said: "MR. LEVIE: Your Honor, the defendant wishes to waive a jury and submit the case to the Court on the transcript of the preliminary proceedings, and testify at a later date." The prosecutor offered the following stipulation: "This matter may be determined by the Court upon the testimony taken at a preliminary examination, the Court to read and consider the transcript thereof with the same force and effect as though the witnesses that testified there testified here under oath, and it may be deemed they did so testify; Any stipulations entered into at the preliminary examination be deemed stipulations entered into here, and People'——Exhibit 1 entered in evidence there to be received as People's Exhibit 1 in evidence here, reserving the right of either side to introduce such additional evidence as the Court deems proper." Defendant's counsel said: "So stipulated." People's Exhibit 1 is the seized heroin. The case proceeded upon that basis and the stipulation was not

withdrawn. That submission of the cause upon the record of the preliminary hearing effected a waiver of any objection that defendant might have had with respect to the ruling upon his counsel's suggestion of a voir dire examination. (*People* v. *Decker,* 155 Cal.App.2d 165, 169-170 [317 P.2d 135].)

Regardless of such waiver, the ruling, if it had occurred in the superior court, could not be held prejudicial. Procedurally, the request for voir dire examination as to the reliability of informants was in order and should have been granted. In a jury trial the ruling could have been seriously prejudicial. The proper procedure is for the court to hear such evidence in the absence of the jury and to determine the question of whether the police were justified in relying upon the informer, to do so in advance of evidence of what occurred in the way of search and seizure. (*People* v. *Gorg,* 45 Cal.2d 776, 780-781 [291 P.2d 469] ; *People* v. *Lawrence,* 149 Cal. App.2d 435, 446-447 [308 P.2d 821].) But this was a non-jury trial. The request was not repeated in the superior court, and defense counsel was not restricted in his cross-examination. He brought out as best he could all the matters which present counsel claims to have been the proper subject of voir dire examination, and the result of the cross-examination was to establish the reliability of the informants. The claim of error in this matter is not meritorious. The argument of error in receiving evidence of the search and seizure and in refusing to strike such evidence must fail of fruition. The officers had reasonable grounds for belief that a felony had been committed; they were justified in forcing the door in the circumstances confronting them; the search and seizure were reasonable and fruitful and appellant has no legitimate complaint concerning the same.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.