[Crim. No. 7235.   Second Dist., Div. Three.   Nov. 28, 1960.]

THE PEOPLE, Respondent, v. WILLIE LAWTON, Appellant.

H. Clay Jacke for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and A. Douglas MacRae, Deputy Attorney General, for Respondent.

VALLÉE, J.—In a nonjury trial defendant was convicted of unlawfully possessing heroin on November 30, 1959. His motion for a new trial was denied. He appeals from the judgment sentencing him to state prison.

On September 22, 1959, Spot Johnson, an informer, told

Officers Leeds, Beckmann, and Drees of the Los Angeles Police Department that a person known to him as Cadillac Willie or Black Willie was selling heroin in large amounts on Central Avenue between 5th Street and 68th Street in Los Angeles. Johnson told the officers this person lived somewhere in the 1000 block on East 24th Street. At the same time, the officers talked to Ricky Pendergraft, another informer, who told them substantially the same thing.

The officers checked the 1000 block on East 24th Street and saw a two-tone blue Cadillac bearing license number KPE-747 parked in front of 1006 East 24th Street. They checked with other police officers and were told Cadillac Willie or Black Willie was defendant Lawton. They checked their monitor file and found under "Cadillac Willie" the name of defendant—William Lawton, his Los Angeles number, and a prior booking number. They checked to see if defendant had a prior police record and found he had a narcotic record.

The officers then checked Central Avenue from 5th Street to 68th Street. On several occasions they saw defendant on 5th Street between Stanford and Central Avenues in a Cadillac with license number KPE-747 talking to a Walter Gibson and a Tommy Bryant. Gibson and Bryant were known to the officers as narcotic users. The officers then talked to another narcotic user known to them as Jazz who lived at 68th Street and Central Avenue. Jazz told them Cadillac Willie was dealing in narcotics up and down Central Avenue and made regular runs on Central and on 5th Street. The officers then learned from an unidentified informer that defendant's address was 1043 South Kingsley Drive, Los Angeles. About 5:20 p.m. on November 30, 1959 Officers Leeds and Beckmann, in plain clothes, went to that address, an apartment house. A two-tone blue Cadillac, license number SBY-256, was parked across the street. The officers walked to the entrance of the apartment house. As they did, they saw defendant standing in the entrance with a bag of groceries. They walked by him into the building and through the hallway to back stairs on the inside of the building. They went around the corner, as if to go up the stairway. Leeds remained on the floor level.

In a few minutes defendant walked down the hallway to room 106, took a key from his pocket, placed it in the door lock, and turned his hand. As he did so, Leeds approached him and identified himself as a police officer. Defendant pushed the door open, stepped inside, and as he did so Leeds

reached the doorway calling, "Police officers, Willie, Police Officers." Defendant slammed the door. Leeds heard the door lock. As he tried the handle he heard footsteps hurrying away from the door. Leeds forced the door and entered the apartment. Defendant was coming away from the bathroom. Leeds told defendant he was under arrest.

Leeds and Beckmann searched the apartment. In the kitchen they found an unsealed package of empty balloons. Under the toilet seat in the bathroom they found a packet of 24 balloons containing heroin. In the bathroom the officers asked defendant how many balloons he had. Defendant said, "about 24." Asked if that was all he had, he said "Yes." When asked where he obtained them, defendant said he did not want to tell. Asked how long he had been dealing, he answered, "I wasn't dealing, I was using it for my own use." Asked where he was "shooting," he said, "I don't shoot it, I horn it." To "horn" it is to sniff it into the nostrils.

The officers did not have a warrant of arrest or a search warrant.

Defendant did not testify or offer any evidence in his own behalf other than cross-examination of the People's witnesses.

■ The first assignment of error is that the officers did not have reasonable cause for the arrest. The point has no merit. Without repeating the evidence, it was enough to arouse in the minds of the officers a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that defendant was in possession of narcotics. This was reasonable cause for the arrest. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852] ; *People* v. *Dewson,* 150 Cal. App.2d 119, 124, 129 [310 P.2d 162] ; *People* v. *Hurst,* 183 Cal.App.2d 379, 384 [6 Cal.Rptr. 483] ; *People* v. *Green,* 183 Cal.App.2d 736, 739 [7 Cal.Rptr. 235].) The arrest was lawful.

It is said the search was unconstitutional. ■ Where the arrest is lawful because there is reasonable cause to arrest, the search incident thereto is legal. (*People* v. *Alcala,* 169 Cal.App.2d 468, 471 [337 P.2d 558].) Since the arrest was lawful the search which was incident thereto was legal.

Defendant says the corpus delicti was not established, hence the statements made by defendant to the officers indicating possession of heroin were erroneously admitted in evidence over his objection. ■ All that is needed to establish the corpus delicti of possessing narcotics in violation of the statute

is to show a reasonable probability of unlawful possession by someone. (*People* v. *Cuellar*, 110 Cal.App.2d 273, 276 [242 P.2d 694].) We think it manifest the evidence we have related established the corpus delicti without recourse to the extrajudicial statements of defendant.

No other point is made.

Affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 25, 1961.