[Crim. No. 7540. Second Dist., Div. Three. Nov. 7, 1961.]

THE PEOPLE, Respondent, v. ALFRED ALDANA RUIZ, Appellant.

Alfred Aldana Ruiz, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Mario A. Roberti, Deputy Attorney General, for Respondent.

FORD, J.—On September 20, 1960, an information was filed in which the appellant Ruiz was accused of the possession of heroin in violation of section 11500 of the Health and Safety Code. At the time of his arraignment and at the time of his trial he was represented by counsel. A trial by jury was waived. Pursuant to stipulation the matter was submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing, the right being reserved to each party to offer additional evidence. The People called Officer Virgin for further testimony. The appellant did not testify. His codefendant Gerald Bruner was acquitted but Ruiz was found to be guilty as charged. The appellant was sentenced to the state prison. He thereafter filed a document in the superior court entitled "Appeal of Conviction" which we deem to be a notice of appeal from the judgment. (See *Smith* v. *Ostly,* 53 Cal.2d 262, 264-265 [1 Cal.Rptr. 340, 347 P.2d 684]; *People* v. *Robinson,* 43 Cal.2d 143, 145 [271 P.2d

872]; *People* v. *Mike,* 163 Cal.App.2d 466, 467 [329 P.2d 519].)

The appellant did not request that counsel be appointed to represent him on this appeal except that he did ask that this court appoint counsel "to act in Amiscus [*sic*] Curiae for the purpose of oral argument upon his appeal"; that request was denied. He has filed an opening brief and a closing brief. The contentions urged by him relate primarily to the validity of his arrest and of the search of his person and of the premises where he was arrested. The officers did not have a search warrant or a warrant for the arrest of anyone on the premises.

The testimony as embodied in the transcript of the proceedings at the preliminary examination will be summarized. Sergeant H. J. Virgin testified that he was a police officer for the city of Los Angeles and was attached to the narcotics division. On August 3, 1960, he and his partner, Officer Walsh, were told by a lieutenant in the narcotics division that a complaint had been received from an anonymous person to the effect that there was an unusual amount of traffic to and from room 310 in a particular apartment building; the anonymous complainant expressed the opinion that narcotics were involved. The officers went to the location but found no one at home in the room. On the next day the officers watched the building and saw Adrene and Gerald Bruner enter and leave the apartment house on two occasions. The witness, Officer Virgin, had seen Adrene at the police headquarters on one or two occasions "in the prior months" and had once advised booking her on a narcotics charge. His partner had arrested Gerald on previous occasions.

On August 5, 1960, the officers went directly to room 310. As they approached the door, it was opened by Gerald; the witness Virgin observed "needle marks resembling that of a narcotics user" on Gerald's left arm. He did not determine whether they were fresh or old marks. They were "like a track, that is common to people who use narcotics. . . ." Gerald attempted to slam the door; the officers "pushed on the door" and, as they did so, the witness saw the appellant Ruiz running toward the bathroom. The officers pursued Ruiz. Gerald ran out of the door and down the hall; Officer Virgin caught him, placed him under arrest and brought him back to the apartment. Officer Walsh then had the appellant Ruiz in custody. Officer Virgin went into the bathroom and found two balloons, each containing "caps," floating in the bowl of the commode. Ruiz was placed under arrest; he was

searched and in his right-hand pocket was found a "condom" containing a powder which resembled heroin. A hypodermic kit, "consisting of a spoon, a needle and a hypodermic" were found under a mattress. On the dresser were found some open bindles containing "a residue of white powder resembling heroin." In the kitchen was a can of milk sugar which, the officer said, "is commonly used by people who cut narcotics." The "condom" and the two balloons containing "caps" were identified by the witness as being part of Exhibit 1.[1] At the police station, the appellant said that the narcotics belonged to him; the officer further testified as follows: "He said he had tried to flush it down and he had gotten down only approximately one gram, and the rest he had missed." The attorney for the appellant Ruiz and his codefendant Bruner moved "to exclude the exhibit, Exhibit 1, on the ground that as previously stated, the arrest of these defendants was an unlawful arrest, and the entry of the apartment was an unlawful entry." The motion was denied.

In *People* v. *Ingle*, 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577], the Supreme Court said at pages 412-413 : "Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.] It is not limited to evidence that would be admissible at the trial on the issue of guilt."

Although the information furnished by the anonymous informer was relevant on the issue of reasonable cause, it is clear that such information alone would not have justified the arrest of either the codefendant Bruner or the appellant Ruiz. (*People* v. *Ramirez*, 185 Cal.App.2d 301, 305 [8 Cal. Rptr. 184] ; *People* v. *Hurst*, 183 Cal.App.2d 379, 384-385 [6 Cal.Rptr. 483].) Had such information been coupled with

---

[1]It was stipulated that it would be deemed that William King, a qualified forensic chemist, had been called as a witness and had testified that in his opinion the powder contained in Exhibit 1 was heroin.

only the further fact that someone opened and then attempted to shut the door as the officers approached, justification would not have existed. (*Cf. People* v. *O'Neill*, 187 Cal.App.2d 732 [10 Cal.Rptr. 114].) But in the present case there were further circumstances. Officer Virgin testified without objection that his partner, Officer Walsh, had arrested Gerald Bruner on previous occasions. It was reasonable to draw the inference that Bruner recognized Walsh as being a policeman as the two officers came to his door. Officer Virgin saw "needle marks resembling that of a narcotics user" on Bruner's left arm. When, under such circumstances, Bruner attempted to slam the door, his act was of more than ordinary significance. As stated in *People* v. *Tyler*, 193 Cal.App.2d 728 [14 Cal. Rptr. 610] at pages 732-733, "A thorough review of the decisions in this state reveals that the courts have sustained arrests without warrants where under suspicious circumstances, the individual arrested performs a furtive act or movement in the presence of the arresting officer (*Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36]; *People* v. *Vegazo*, 191 Cal.App.2d 666 [13 Cal.Rptr. 22]; *People* v. *Pendarvis*, 178 Cal.App.2d 239 [2 Cal.Rptr. 824]; *People* v. *Poole*, 174 Cal.App.2d 57 [344 P.2d 30] ; *People* v. *McMurray*, 171 Cal.App.2d 178 [340 P.2d 335]; *People* v. *Cantley*, 163 Cal.App.2d 762 [329 P.2d 993]; also cf. *People* v. *Aguilar*, 191 Cal.App.2d 887 [13 Cal.Rptr. 121]; *People* v. *Quong*, 189 Cal.App.2d 318 [11 Cal.Rptr. 170]; *People* v. *Fitch*, 189 Cal.App.2d 398 [11 Cal.Rptr. 273])." In the present case, the factual situation was sufficient to arouse in the minds of the officers a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that Bruner was in possession of narcotics. This was reasonable cause for the pursuit and arrest of Bruner. (See *People* v. *Lawton*, 186 Cal.App.2d 834, 836 [9 Cal.Rptr. 122].)

▮ With respect to the appellant Ruiz, his mere presence in the room from which Bruner attempted to exclude the officers would not have justified his arrest or a search of his person. (See *People* v. *Ramirez, supra*, 185 Cal.App.2d 301, 306.) But in the present case there was more than mere presence or association. The dash of Ruiz for the bathroom was, under the circumstances, a furtive act sufficient to arouse reasonable suspicion that Ruiz was in possession of narcotics.[2]

---

[2] "The possession [of narcotics] may be individual, through an agent, or joint with another. (*People* v. *Graves*, 84 Cal.App.2d 531, 534 [191 P.2d 32]. All persons concerned in the commission of the crime, whether

(*Cf. People* v. *Rollins,* 161 Cal.App.2d 560, 563 [326 P.2d 938].) The officers were warranted in inferring that Ruiz was about to empty narcotics into the toilet and flush it, a familiar method of disposing of contraband. (See *People* v. *Hurst, supra,* 183 Cal.App.2d 379, 385; *People* v. *Williams,* 175 Cal.App.2d 774, 776 [1 Cal.Rptr. 44].) The action of Ruiz in their presence could not be ignored by the officers. (See *People* v. *Rollins, supra,* 161 Cal.App.2d 560, 563.) As said in *People* v. *Ingle, supra,* 53 Cal.2d 407, at page 414: "The trial court found that there was reasonable cause for the arrest, that is, that there was probable cause. Unless it can be said that prudent men in the position of these officers knowing what they knew and seeing what they did would not have had reasonable cause to believe and to conscientiously entertain a strong suspicion that Ingle was violating or had violated the law, the arrest should be held lawful."

 Since the arrest of the appellant was lawful, the search incident thereto, both of the apartment and of the appellant's person, was legal. (*People* v. *Lawton, supra,* 186 Cal.App.2d 834, 836; *People* v. *Alcala,* 169 Cal.App.2d 468, 471 [337 P.2d 558]; *People* v. *Adame,* 169 Cal.App.2d 587, 598 [337 P.2d 477].) Where an arrest is lawful the search incident thereto is not unlawful merely because it precedes rather than follows the arrest. (*People* v. *Ingle, supra,* 53 Cal.2d 407, at p. 413.)

 The appellant asserts that "the arresting officers had sufficient time to secure a search warrant" and therefore should have done so. Of a similar contention, the court said in *People* v. *Rollins, supra,* 161 Cal.App.2d 560, at page 563: "In these circumstances the fact that they had made no effort to procure a search warrant during the period of two days following the receipt of information from the first informant is immaterial." (See also *People* v. *Winston,* 46 Cal.2d 151, 162-163 [293 P.2d 40]; *People* v. *Elliott,* 186 Cal.App.2d 178, 183 [8 Cal.Rptr. 795].) As stated in *United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653], at page 66: "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable."

 The appellant also contends that there was a failure to comply with the provisions of sections 841 and 844 of the

they commit the act constituting the offense or aid and abet in its commission, are principals. (Pen. Code, § 31.) We think it clear that one may aid and abet another in the possession of a narcotic. . . ." (*People* v. *Bigelow,* 104 Cal.App.2d 380 [231 P.2d 881], at p. 389.)

Penal Code.[3] The provision of section 841 requiring that certain information be given to the person to be arrested is not applicable "when the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of . . . an offense." (See *People v. Hammond,* 54 Cal.2d 846, 854 [9 Cal.Rptr. 233, 357 P.2d 289]; *People v. Beard,* 46 Cal.2d 278, 281 [294 P.2d 29]; *People v. Herman,* 163 Cal.App.2d 821, 826 [329 P.2d 989].) Moreover, as said by the Supreme Court in *People v. Maddox,* 46 Cal.2d 301 [294 P.2d 6], at page 305: "Accordingly, we held in the *Martin* case [45 Cal.2d 755 (290 P.2d 855)] and in *People v. Boyles, supra,* 45 Cal.2d 652, 654 [290 P.2d 535], that illegal conduct that was entirely unrelated and collateral to the securing of the evidence objected to does not render the evidence inadmissible. (See also *Rogers v. Superior Court, ante,* [46 Cal.2d] pp. 3, 10-11 [291 P.2d 929].) An example of such conduct would be the failure to comply with the requirements of Penal Code, section 841, which are analogous to the requirements of section 844. If the officer has reasonable cause to make an arrest, a violation of section 841 would be unrelated and collateral to the securing of evidence by a search incident to the arrest, for what the search turns up will in no way depend on whether the officers informed 'the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it.' "

 With respect to the asserted violation of section 844 of the Penal Code, the court said in the *Maddox* case in part as follows (46 Cal.2d, at pp. 306-307) : "Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may

[3]Section 841 of the Penal Code is as follows: "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or the person to be arrested is pursued immediately after its commission, or after an escape."

Section 844 of the Penal Code is as follows: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. (*Read* v. *Case,* 4 Conn. 166, 170 [10 Am.Dec. 110]; see Rest., Torts, § 206, com. d.) Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance. . . . Moreover, since the officer's right to invade defendant's privacy clearly appears, there is no compelling need for strict compliance with the requirements of section 844 to protect basic constitutional guarantees. (*Cf. People* v. *Boyles, supra,* 45 Cal.2d 652, 656; *People* v. *Cahan, supra,* 44 Cal.2d 434, 442, footnote.) We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains.'' As said in *People* v. *Shelton,* 151 Cal.App.2d 587 [311 P.2d 859], at page 588: ''The cases hold that where compliance with this provision ['after having demanded admittance and explained the purpose for which admittance is desired'] would probably frustrate the arrest or permit the destruction of incriminating evidence compliance is not required.''

The appellant seems to contend that there was unnecessary delay in taking him before a magistrate. (See Pen. Code, § 849.) There is no support in the record for such assertion. But, in any event, in the absence of a showing of a prejudicial effect arising from such a delay, it does not constitute a sound ground of attack upon the judgment of conviction. (See *People* v. *Lollis,* 177 Cal.App.2d 665, 671 [2 Cal. Rptr. 420], and the cases cited therein.)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 21, 1961, and appellant's petition for a hearing by the Supreme Court was denied January 17, 1962.