[Crim. No. 7711.   Second Dist., Div. Two.   Dec. 22, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. JUNE BACA et al., Defendants and Appellants.

Manuel Valenzuela for Defendants and Appellants.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—After a nonjury trial, appellants June Baca and Alvin Sanchez were convicted of possession of heroin, in violation of section 11500, Health and Safety Code. As to appellant Sanchez, the charge of a prior felony conviction for a violation of the same statute was found to be true.

Appealing from the judgments of conviction, appellants advance as their sole ground of appeal the contention that the incriminating evidence against them was seized by police officers after an unlawful entry into an apartment occupied by appellants, and that the trial court erred in overruling their objection to the admission of such evidence.

Police Officers Fesler and Dorrell were employed by the police department of the City of Los Angeles and were assigned to the narcotics division. On December 21, 1960, Officers Fesler and Dorrell met appellants on Temple Street in said city and had conversations with them concerning the subject of narcotics. In the first of these conversations, both appellants being present, Sanchez told the officers that approximately a month previously he had been released from prison after serving a term for a narcotics offense. He said that he was not using narcotics yet, but that he had had one ''fix.'' He said that he was living with his mother at an address on South Figueroa Street, which he gave to the officers. Appellant Baca stated that she was living with Sanchez. At that time Officer Fesler, an expert in determining whether marks were made by narcotic injections, examined both appellants for narcotic injection marks. He found marks on Miss Baca's arms, indicating that she was at that time currently using narcotics.

In a separate conversation with appellant Baca, she told the officers that Sanchez was dealing in narcotics, and that his connection was in East Los Angeles in the vicinity of Atlantic and Whittier Boulevards. She said that she would try to help the officers in catching Sanchez and his connection. She told the officers the kind of car used by Sanchez in the transportation of narcotics, but that she did not know the license number of the car. She said that she would get it and give it to them by telephone, and that, if possible, she would get in touch with them the next time Sanchez went to buy narcotics.

Between December 21, 1960, and January 3, 1961, Officer Fesler received two telephone calls from appellant Baca. In the first call she indicated that something had gone wrong with the deal, and that they hadn't gone to ''score.'' In a later call, she said that she and Sanchez had met a peddler in Pasadena where they had gone to buy narcotics.

On January 3, 1961, Officers Dorrell and Fesler went to the address on Figueroa Street which Sanchez had given as his place of residence. They entered the apartment house located at this address, and were informed that Sanchez occupied apartment ''F'' on the second floor. The officers went upstairs and proceeded along a hallway which led to apartment ''F.'' They did not have a search warrant or a warrant of arrest.

Officer Fesler stopped at the door marked ''F'' while Dorrell proceeded further down the hallway to a window which

opened onto a fire escape. When Fesler approached the door marked "F" he found it partly open. He knocked but received no answer. He then looked inside the door and, observing that it led into another smaller hallway, he entered. He observed that the doors on his right and left were closed, but the door directly ahead of him was open. After a few seconds a woman appeared in the open doorway. Fesler displayed his police badge, and inquired whether Alvin Sanchez was there. The woman said "Just a minute" and left after stating that she would be right back.

When the woman reappeared, Fesler again asked her if Sanchez was there, and she replied in the affirmative. Through the open doorway, directly ahead of him, Fesler saw a man lying on a bed. He asked the woman if that was Sanchez. She said "no" and moved to a point in the hallway opposite a closed door. When Fesler asked her if Sanchez was in there, she said, "Will you step out in the hall?" At that time Fesler knocked on the door and a voice from within said "Come in."

Officer Fesler thereupon entered the room, a bedroom. Seeing appellants lying in bed, he said "Hello." Sanchez jumped "straight up" in bed. Fesler said: "Sit down. We just want to talk to you." At this point, Sanchez jumped from the bed and grappled with the officer. While wrestling with Sanchez, Fesler saw Baca reach from the bed to an adjacent table, grab an object which appeared to be covered with a crumpled piece of tissue, and then withdraw her hand under the bed clothes. Fesler thereupon called to Officer Dorrell. Sanchez shouted something to Baca, whereupon she jumped out of bed entirely unclothed, and ran out of the room carrying the tissue-covered object in her hand.

Meanwhile, Officer Dorrell, who had stationed himself on the fire escape had heard the noise of the scuffling and shouting, which apparently came through an open window covered by a curtain. He pushed the curtain aside and looked into the room. He saw June Baca standing near the window and Sanchez grappling with Officer Fesler. Appellant Baca turned and started to run toward the bedroom doorway. Officer Dorrell then left the fire escape, ran down the main hallway and through the door at which he had left Officer Fesler. He found appellant Baca in a bathroom, adjacent to the inner hallway. She was standing in front of a toilet, which was in the process of flushing. The officer pushed her to one side and retrieved from the toilet bowl an object wrapped in tissue

paper. The contents were 17 balloons and a cellophane wrapper containing 113 capsules of a powder, which, on chemical analysis, proved to be heroin. Appellants were thereafter placed under arrest.

We readily conclude that there was more than sufficient evidence to support the trial court's finding that the actions of the officers leading to the seizure of the contraband and the arrest of appellants were both reasonable and lawful. The officers went to the apartment with knowledge that both appellants were users of narcotics and with information, which reasonably could be regarded as credible, that Sanchez was currently engaged in the business of selling narcotics. They knew also that only recently he had been released from prison after serving a term for a narcotics offense. (See *People* v. *Ingle,* 53 Cal.2d 407, 414 [348 P.2d 577] and *People* v. *Rollins,* 161 Cal.App.2d 560, 563 [326 P.2d 938].)

It is not unreasonable for police officers to seek interviews with persons suspected of criminal activity, or to call upon persons at their homes for such purpose. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852] ; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855].) With respect to the question whether or not there was reasonable or probable cause for an arrest or a search without a warrant, our Supreme Court has said : ''There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.] It is not limited to evidence that would be admissible at the trial on the issue of guilt.'' (*People* v. *Ingle, supra,* 53 Cal.2d 407, 412-413.) ''Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused.'' (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250].)

In the instant case there was not only substantial evidence that the officers entered appellant's living quarters with

reasonable cause to believe that both were currently engaged in criminal activities of a serious nature, but also sufficient evidence to support a finding that the entry was with the consent of the occupants. ▮ It is well recognized that if someone with apparent authority consents to the entry, and the entry is made in good faith, it is not unlawful. (*People* v. *Ransome,* 180 Cal.App.2d 140, 145 [4 Cal.Rptr. 347].) ▮ In addition, consent to enter may be indicated by actions as well as by words. (*People* v. *Smyre,* 164 Cal.App.2d 218, 224 [330 P.2d 489].) ▮ ▮ It could be inferred from the conduct of the woman who appeared in the inner hallway, after Officer Fesler had entered, that she consented to the entry. (See *People* v. *Quinn,* 194 Cal.App.2d 172, 176 [14 Cal.Rptr. 814], and cases cited.) When appellant Sanchez said ''Come in'' after the officer knocked on the bedroom door, effective consent was given. (See *People* v. *Mendoza,* 145 Cal.App.2d 279, 285 [302 P.2d 340].)

Under the circumstances, the actions of appellants were such as to arouse in the minds of the officers a suspicion founded on circumstances sufficiently strong to warrant a reasonable man's belief that they were in possession of narcotics. (See *People* v. *Tyler,* 193 Cal.App.2d 728, 734-735 [14 Cal.Rptr. 610] and *People* v. *Lawton,* 186 Cal.App.2d 834, 836 [9 Cal.Rptr. 122].) Sanchez grappled with Officer Fesler while Baca furtively grabbed an object and ran for the bathroom. The officers were warranted in believing that she intended to employ a familiar method of disposing of contraband. (See *People* v. *Hurst,* 183 Cal.App.2d 379, 385 [6 Cal. Rptr. 483] ; *People* v. *Williams,* 175 Cal.App.2d 774, 776 [1 Cal.Rptr. 44].) Hence, the reasonableness of the seizure and subsequent arrest appears clearly established.

The judgments are affirmed.

Fox, P. J., and Ashburn, J., concurred.