[Crim. No. 10235.    Second Dist., Div. One.    Aug. 16, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RAUL De LEON, Defendant and Appellant.

Charles A. Kent, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William L. Zessar, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with three counts of burglary—on December 10, 18 and 26, 1963—and the following prior felony convictions: burglary, second degree (1950), burglary, first degree (1944), forgery of government check (1942), and possession of marijuana (1941). He admitted all four felony convictions; it was stipulated that if defendant was convicted of any burglary charged in the information it be fixed at second degree. A jury returned its verdict of guilty on Count I and not guilty on Counts II and III. He appeals from the judgment, order denying motion for new trial and order denying motion for new trial upon recon-

sideration. The purported appeals from the two orders are dismissed. (*People* v. *Bernhardt*, 222 Cal.App.2d 567, 571 [35 Cal.Rptr. 401].)

The burglaries charged in Counts II and III, of which defendant was acquitted, allegedly were committed with an accomplice, Joe Villegas. No accomplice was involved in the Pandolfi burglary (Count I) of which defendant was convicted. The following facts refer only to Count I. Twenty-six items of the value of approximately $3,500 were stolen from the home of Everett Pandolfi on December 10, 1963; they included a small portable radio, a man's electric razor and all of his and his wife's jewelry, among which were a gold angel pin (Exh. 1), a string of pearls (Exh. 2), a pair of gold earrings (Exh. 3), and a narrow baguette-type diamond platinum watch with a diamond bracelet. Mr. and Mrs. Pandolfi had left their home at 8 a.m. to work at their jewelry store and arrived home between 8 and 9 p.m.; during the day entry into the house had been made through a den window which had been forced open. Defendant had worked for the Pandolfis as a gardener with another man for one week earlier in the year. On December 24 defendant gave the gold angel pin (Exh. 1) to a friend, Jennie Luera; twelve days after the burglary (December 22) defendant gave Mary Miyorga a string of pearls (Exh. 2) and a pair of gold earrings (Exh. 3); and sometime in December he showed Amelia Sarinana a narrow watch with diamonds which he said he intended to give to his daughter. The watch was almost identical to Exhibit 7. Defendant neither testified nor offered a defense.

■ Appellant argues that there is nothing in the record to connect him with the burglary other than the possession of the stolen property. While mere possession of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary, possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition, slight corroboration in the form of conduct of the defendant tending to show his guilt; "and the failure to show that possession was honestly obtained is itself a strong circumstance tending to show the possessor's guilt of the burglary. (*People* v. *Lang*, 142 Cal. 482, 484-485 [76 P. 232]; *People* v. *Taylor*, *supra*, 4 Cal. App.2d 214, 217 [40 P.2d 870].)" (*People* v. *Citrino*, 46 Cal.2d 284, 288-289 [294 P.2d 32]; *People* v. *McFarland*, 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449].) ■ Ap-

pellant's argument that this rule forces him to testify is without merit. While the rule requires that defendant either "show" that his possession of recently stolen property was honestly obtained, or have his failure to do so be considered a strong circumstance tending to show his guilt, it does not compel him to take the stand to explain his possession. He may "show" that possession was honestly acquired by producing as a witness the person from whom he received the stolen property, if such a person exists, or by any other evidence that may explain it. (See *People* v. *Citrino*, 46 Cal.2d 284, 289 [294 P.2d 32].) Here defendant put on no defense— he offered no evidence to show how or under what circumstances he came into possession of the Pandolfi jewelry, nor did he testify. This is analogous to the effect of two federal statutes held to be constitutional in *United States* v. *Gainey*, 380 U.S. 63 [85 S.Ct. 754, 13 L.Ed.2d 658]. Therein defendant was convicted of carrying on an illegal distillery business; he did not testify. An instruction informed the jury of the two statutory provisions which authorized it to infer guilt of the substantive offenses from the fact of a defendant's unexplained presence at the site of an illegal still. The Supreme Court held that the statutory inference does not violate due process and is constitutionally permissible. The purpose of the provisions is to meet the practical impossibility of proving actual participation in such illegal activity except by inference drawn from the accused's presence when the illegal acts were committed.

However, there are other circumstances tending to show defendant's guilt which are sufficient corroboration of his possession of the stolen property to support his conviction of the burglary of the Pandolfi home. Defendant was in possession of the property twelve days after the burglary; he had not one, but four items. He not only had lived in the same town as the Pandolfis, but had actually worked for them as a gardener earlier in the year and as such was in a position to know that they were not at home during the day. After the burglary defendant left the state and went to Texas where he was finally apprehended.

After testifying that defendant's statements were freely and voluntarily given, Officer Thompson read a written statement of a conversation had with defendant at the jail in Los Angeles after his arrest in and extradition from Texas. Appellant now contends that the "admission by silence" contained in the statement was received in evidence over his

objection that he did not have a fair opportunity to reply. While it is true that defense counsel made several objections to specific portions of the statement read by Officer Thompson, the record fails to bear out appellant's claim that he interposed any such objection to the "admission by silence." He objected to the words "in the joint" with reference to his statement that "he learned not to admit anything"; the three words were deleted. He then objected to other specific portions of the statement on the ground that they implied other unlawful acts; they were deleted. Finally he objected to "the last statement on the next page, the last five words," on the ground that defendant had "no fair and reasonable chance to reply"; the trial judge sustained the objection by declaring "they are out," and they too were deleted. Defendant interposed no objection that he was not given a fair opportunity to reply to any other part of the statement; most certainly, he made no such objection to Officer Thompson's testimony that defendant remained silent after being told that Villegas (alleged accomplice in the burglaries alleged in Counts II and III) and the two ladies would testify against him. █ Whether defendant was given a fair and reasonable chance to reply is a matter for the trial court's determination. When an accused stands mute in the face of an accusatory statement it is for the trial court to determine in the first instance whether the accusation has been made under circumstances calling for a reply, whether the accused understood the statement and whether his conduct or response was such as to give rise to an inference of acquiescence or guilt consciousness. Then it is for the jury to decide on any statement properly admitted, whether the accused did reply to it, and whether if he did not do so, or his reply was evasive or equivocal, it showed criminal intent or a consciousness of guilt or acquiescence. (*People* v. *Simmons*, 28 Cal.2d 699, 712-713 [172 P.2d 18]; *People* v. *Millum*, 42 Cal.2d 524, 528 [267 P.2d 1039].) █ The objections made in the court below were pinpointed to specific parts of the statement; they are not now available to other parts of the statement not objected to at the trial. (*People* v. *Romano*, 197 Cal.App.2d 622, 627 [17 Cal.Rptr. 399].) Having made no objection in the trial court, defendant cannot now raise the same for the first time on appeal. (*People* v. *Pickens*, 190 Cal.App.2d 138, 148 [11 Cal.Rptr. 795]; *People* v. *Romano*, 197 Cal.App.2d 622, 627 [17 Cal.Rptr. 399]; *People* v. *Millum*, 42 Cal.2d 524, 528 [267 P.2d 1039].)

536

Appellant argues that the "admission by silence" was improperly admitted in evidence because he was not advised of his right to counsel and right to remain silent before the officers talked to him. The entire statement read by Officer Thompson[1] relates primarily to Counts II and III which involved Villegas and of which defendant was acquitted. Appellant therefore centers his attack on the following to which he refers as an "admission by silence": "I told him we knew that Villegas would testify against him, and that the two ladies would testify that he gave them the jewelry.

"De Leon did not answer. I told him that we knew that he had pulled a lot of burglaries and asked him to clear up all those he pulled.

"De Leon said that he would tell all about them after

---

[1] "(Reading) 'I told him that Lowry had a good case on him. De Leon said he would not admit to anything until he had a preliminary and found out how much they had.

" 'I told him that Villegas would testify against him, and that the two ladies would testify that he gave them the jewelry.

" 'De Leon did not answer. I told him that we knew that he had pulled a lot of burglaries and asked him to clear up all those he pulled.

" 'De Leon said that he would tell all about them after court. He said that it looked like they had a good case against him, but he learned not to admit to anything.

" 'Villegas was brought into the room by Lowry and Schrum. I left the room. Villegas stayed in the room about 15 minutes.

" 'When Villegas, Schrum and Lowry left the room I again entered. I said, "See, they weren't lying. Villegas will testify against you."

" 'De Leon said he knew they weren't lying—"knew that he would testify against me. I knew that when Looney told me in Texas." De Leon said that the kid was young, that he would testify against him to save himself.

" 'I said, "If you were the one who was caught instead of him, would you have told?"

" 'De Leon said, "No, I would not have said anything about him." He said, "Yea, I told him not to keep that stuff around the house. In fact, I used to live next door to him and I didn't like to go to his house because all of that stuff was in the house. I can tell you right now, he pulled a lot of those things by himself, I can prove I wasn't with him."

" 'I said, "That may be true. I think that a lot of these jobs that he was talking about, he went with you on the jobs and the stuff we found in the house was his share of the loot. I know that you wouldn't take all the chances and then turn around and give it to him. I know that this was his share of the loot and that he went on these burglaries with you."

" 'He nodded his head, and he then said that when he goes to court he'll fix this kid.

" 'Lowry and Schrum came back into the room. I said to them in De Leon's presence: "De Leon stated he would tell you all about those jobs after he goes to court. He said that this kid is covering up his part in it and throwing all the blame on him." ' '

"Mr. McCarthy: Q Now, after you made that statement, did Mr. De Leon make any reply?

"A No, sir."

court. He said that it looked like they had a good case against him, but he learned not to admit anything.''

There is considerable doubt that defendant's silence constitutes an admission—admission of what?—at most, that Villegas and the two ladies would testify against him. Also it appears that in remaining silent defendant may have been asserting his privilege against self-incrimination. In response to the officer's statement that they knew he had ''pulled a lot of burglaries'' and his request that defendant ''clear up all those he pulled'' defendant said three things—that he would tell all about them after court, that it looked like they had a good case against him, and that he learned not to admit anything. In any event, defendant should have made proper objection giving the trial court the opportunity to determine '' '. . . whether the import of the statements is such that it would furnish a foundation for proof of conduct, . . .' '' (*People* v. *Romano,* 197 Cal.App.2d 622, 636 [17 Cal.Rptr. 399].) If what appellant now refers to as an ''admission by silence'' and his statements were not legally admissions (*People* v. *Simmons,* 28 Cal.2d 699, 712 [172 P.2d 18]) then defendant should have objected on the trial level. Had defendant done so the statements probably would not now be in the record.

According to his own admission, since 1941, defendant had been in considerable trouble through the commission of four serious felonies—second degree burglary, first degree burglary, forgery and possession of marijuana; little wonder, with this experience behind him he refused to tell the police anything until after court because ''he learned not to admit to anything.'' In the past he no doubt acquired considerable knowledge concerning the rights which he was asserting.

However, at most, defendant's silence and his statements to Officer Thompson amounted to no more than admissions; nevertheless under the exclusionary rule announced in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.E.2d 977]; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; and *People* v. *Stewart* (1965) 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], their receipt in evidence would constitute error. But it does not follow that automatically the conviction must be reversed. Unlike the improper receipt into evidence of confessions, admissions do not require a reversal unless, in the light of the entire record, the error has resulted in a miscarriage of justice.

(Cal. Const., art VI, § 4½; *People* v. *Dorado,* 62 Cal.2d 338, 356 [42 Cal.Rptr. 169, 398 P.2d 361].)

An examination of the entire record convinces us that the jury either did not believe the testimony of Officer Thompson relating the conversation between him and defendant, or it did not infer from defendant's silence and statements a criminal intent or a consciousness of guilt or acquiescence. The reporter's transcript of the trial also contains the evidence pertaining to Counts II and III, both burglary, on December 18 and 26, 1963, respectively, of which defendant was acquitted. Relative thereto Villegas, an eyewitness and alleged accomplice, testified concerning how the burglaries were committed and what items were stolen; this was corroborated by jewelry store owners. The evidence was much stronger than that relating to Count I of which he was convicted. If Officer Thompson's testimony relating to the conversation between him and defendant resulted in prejudice to defendant then why was he found not guilty on Counts II and III? It is significant that defendant's conversation with the officer primarily concerned Villegas who had nothing to do with Count I and who did not testify concerning the Pandolfi burglary. We can only conclude that Officer Thompson's testimony did not influence the jury to the prejudice of the defendant. (*People* v. *Jeans,* 79 Cal.App. 464, 467 [249 P. 1089].) Considering the entire record we think it not reasonably probable that a result more favorable to defendant would have been reached in the absence of the alleged error. (*People* v. *Watson,* 46 Cal.2d 818, 837 [299 P.2d 243] (cert. den. 355 U.S. 846 [78 S.Ct. 70, 2 L.Ed.2d 55]).) The guilt of De Leon is clear from the testimony of Everett Pandolfi, Jennie Luera, Mary Miyorga and Amelia Sarinana, and we find nothing in the record to show that he was not fairly tried. We cannot say there has been a miscarriage of justice. (*People* v. *Watson,* 46 Cal.2d 818, 834 [299 P.2d 243]; *People* v. *Cruz,* 61 Cal.2d 861, 868 [40 Cal.Rptr 841, 395 P.2d 889].) Nor did the trial judge, who is in a better position than this court to determine whether a miscarriage of justice resulted from error, believe that defendant suffered prejudice therefrom; he denied several motions for a new trial. We will not reverse his determination on this issue (*People* v. *Sarazzawski,* 27 Cal.2d 7, 15 [161 P.2d 934] (cert. den. 331 U.S. 861 [67 S.Ct. 1751, 91 L.Ed. 1867]).)

■ The same conclusion applies to the district attorney's comments to the jury on defendant's failure to testify, and

the giving of an instruction relating to the legal effect of his failure to take the stand. In *Malloy* v. *Hogan*, 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653], and *Griffin* v. *California*, 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], the Supreme Court held that the Fifth Amendment privilege against self-incrimination is available to a defendant in a state court through the Fourteenth Amendment, and that the California rule permitting comment violated the Fifth Amendment. It follows, therefore, that the comments of the deputy district attorney and the giving of the instruction (CALJIC (Rev. Ed.) No. 51) constituted error. However, as hereinabove set forth, it cannot be said that the error has resulted in a miscarriage of justice requiring a reversal of the judgment. (*People* v. *Bostick* (1965) 62 Cal.2d 820, 823 [44 Cal.Rptr. 649, 402 P.2d 529]; § 4½, art. VI, Cal. Const.; *People* v. *Teale* (1965) 63 Cal.2d 178, 196 [45 Cal.Rptr. 729, 404 P.2d 209].) As was said in *People* v. *Teale, supra,* (63 Cal.2d 197), the ''circumstantial web of evidence which implicated [him] was not refuted, . . . The comments . . . on [his] failure to explain away the circumstantial web of evidence become of less significance in view of the defense's complete failure to refute such evidence by any means whatsoever. That evidence, in effect, stands unchallenged and the [comments] add little to its stature.''

■ However, the instruction (No. 39) that ''If he [defendant] has a reasonable opportunity to show that his possession was honestly acquired but refuses or fails to do so, this is a circumstance that tends to show his guilt'' was properly given. We have already concluded that the California rule upon which this instruction is based (*People* v. *Citrino,* 46 Cal.2d 284, 288-289 [294 P.2d 32]) does not compel the defendant to testify, only to ''show'' that his possession was honestly acquired. Nor does this instruction comment on defendant's failure to testify; here again, it relates only to his refusal or failure to ''show'' that his possession was honestly acquired. In *United States* v. *Gainey,* 380 U.S. 63 [85 S.Ct. 754, 13 L.Ed.2d 658], the court instructed the jury in accord with a federal statute that '' 'unless the defendant by the evidence in the case and by proven facts and circumstances explains such presence (at the site of an illegal distillery business) to the satisfaction of the jury' '' it is sufficient evidence to authorize conviction of the substantive offense. In the context of the instructions as a whole, the court did not consider that it ''can be fairly understood as a

comment on the petitioner's failure to testify. Cf. *Bruno* v. *United States*, 308 U.S. 287 [60 S.Ct. 198, 84 L.Ed. 257]. The judge's overall reference was carefully directed to the evidence as a whole, with neither allusion nor innuendo based on the defendant's decision not to take the stand.

"In *McNamara* v. *Henkel*, 226 U.S. 520, 525 [33 S.Ct. 146, 57 L.Ed. 330, 333], the Court approved a proceeding which did no more than 'accord to the evidence, if unexplained, its natural probative force.' That is all that Congress has done here. We cannot find that the law it enacted violates the Constitution."

Appellant also contends that the evidence that he was arrested in his native Texas did not justify certain "inferences" made by the prosecutor in his closing argument "over the objection of defense counsel." The record shows that while defense counsel interrupted the prosecutor several times with comments of his own, that he made only one objection to that portion of his closing argument now under attack. He objected to the statement that defendant took the jewelry with him when he left town. Defendant did not object to statements that he made "a good haul," that "he left town with his loot" and that he may have sold it through a fence to get to Texas. ██ Nevertheless, a prosecutor is permitted to draw reasonable inferences from the evidence (*People* v. *Eggers*, 30 Cal.2d 676, 683 [185 P.2d 1] (cert. den. 333 U.S. 858 [68 S.Ct. 728, 92 L.Ed. 1138])), and, without reciting each in full, we believe that all of the prosecutor's comments relative to defendant's trip to Texas and what he did with the stolen property were the result of proper and reasonable inferences from the extensive evidence in the record.

Defendant did object to the prosecutor's comment in his closing argument that the world's record for the "overhead snatch" was about 225 pounds. However in making the objection defense counsel stated, "I have heard otherwise"; but the trial court made no ruling thereon and counsel did not ask for one. The prosecutor's comment concerning the world's record for the "overhead snatch" was made in answer to defense counsel's question to the jury in his argument, "Who can't lift 150 pounds in an overhead snatch?" It related to whether defendant was strong enough to have committed the Churchill jewelry burglary (Count III) by climbing a wall to the roof and dropping through a skylight. This was in answer to defense counsel's argument in which

he "tried to make him [defendant] such a puny little squirt." The prosecutor's comment was proper; moreover, whatever prejudice might attach to the comment was nullified by defense counsel's voluntary statement, "I have heard otherwise." But more significant, this related entirely to Count III of which he was acquitted, and did not apply to Count I.

In the argument "Appellant Was Not Brought To Speedy Arraignment" (A.O.B. p. 29), he makes numerous assertions not supported by the record. A minute order shows that originally defendant appeared for arraignment on April 20, 1964, at which time counsel was appointed to represent him; arraignment was continued and had April 27, 1964. While section 976, Penal Code, contains no specific time in which defendant is to be arraigned (*People* v. *Boyd,* 203 Cal. App.2d 348, 351 [21 Cal.Rptr. 444], reaffirmed 228 Cal. App.2d 844 [39 Cal.Rptr. 693]), he is protected by section 1382, which provides that the accused must be brought to trial within 60 days of the filing of the indictment. The first information was filed on April 21, 1964, it was amended on May 23, 1964, on which day he was tried. If defendant is complaining that he was not brought before a magistrate within two days of his arrest under section 825, Penal Code, the record before us does not support his claim. After defendant's motion for new trial was denied for the second time, defendant was asked by the trial court if he had any cause to assign, legal or otherwise, why judgment should not be pronounced; defendant said he would like to know why there was a delay in bringing him before a judge after the complaint was filed, asserting that he was arrested on March 21, 1964, in Texas and not taken before a court until April 2 or 3, 1964. This statement was not under oath. His counsel stood by and said nothing; perhaps he considered defendant's complaint not to be justified. ▮▮▮ In any event, there is nothing in the record to show when defendant was arrested and when he was brought before a magistrate. The records of the court before which he was brought after his arrest are not part of the record of the trial court or this court. (*People* v. *Wein,* 50 Cal.2d 383 [326 P.2d 457] (cert. den. 359 U.S. 992 [79 S.Ct. 1122, 3 L.Ed.2d 980]).) Neither is there evidence of improper extradition or that defendant was not advised of the charges against him between March 24 and 31, 1964. We will not presume error. (*People* v. *Farrara,*

46 Cal.2d 265, 268 [294 P.2d 21].) Moreover, defendant has made no showing that he was prejudiced because of any delay. (*People* v. *Dosier,* 180 Cal.App.2d 436, 441 [4 Cal. Rptr. 309].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.