[Crim. No. 13633.   Second Dist., Div. Three.   May 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. STEVEN TERRY SUMMERFIELD, Defendant and Appellant.

Norman Soibelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert H. Francis, Deputy Attorney General, for Plaintiff and Respondent.

COBEY, Acting P. J.—This is an appeal following a jury trial from a judgment of conviction of burglary which the jury found to be of the first degree. The grounds of appeal are: (1) prejudicial error was committed in admitting in evidence two pieces of paraffin and testimony respecting a screwdriver allegedly products of an illegal search and seizure; (2) the evidence in support of the conviction was insubstantial; (3) the court refused appellant's prepared jury instruction that if a burglary had been committed it could only be of the second degree; and (4) the court, in giving an instruction based on CALJIC 235, improperly commented on appellant's exercise of his constitutional privilege against

compulsory self-incrimination. Only the last mentioned ground has merit.

At about 10:15 p.m. on April 27, 1966, Mrs. Marguerite Sadler returned to her second-floor apartment in the Hollywood area of Los Angeles. She was surprised to find the door of her apartment open and some lights on inside.[1] She entered, inquired nervously as to who was there and what he wanted and then stepped a little further into the living room to see down the inner hall. She saw appellant, a stranger to her, standing in the doorway to her dressing room. She asked him what he was doing there and he replied that he was looking for the apartment house manager. Appellant left the apartment immediately. Mrs. Sadler followed him out and saw him go into the manager's apartment which was on the other side of the building on the first floor. She immediately called the police.

The police arrived about 10:30 p.m. and after Mrs. Sadler had told them what had happened they went to the manager's apartment. They knocked on the door, rattled it, asked that it be opened and finally two of them went around to the side of the apartment where one of them removed a screen from a living room window and raised the lower part of the window. These two policemen then shined their flashlights through the window and discovered appellant inside. One of them yelled to him to open the door. Appellant opened the door and was thereupon arrested, handcuffed and searched. Two pieces of paraffin wrapped in a portion of a paper bag were found in one of his pants' pockets.

Mrs. Sadler was then called down to the manager's apartment by the police. She identified appellant as the intruder in her apartment and the two pieces of paraffin which bore her handwriting on the paper around them. She testified that the paraffin had been on the sink in her apartment under the kitchen window. The police, accompanied by Mrs. Sadler, took a screwdriver which one of the officers had found in the easy chair in which they had seated appellant in the manager's apartment and went to Mrs. Sadler's apartment to examine its front door and lock. They found that the lock of the door had evidently been jimmied and that the screwdriver fitted perfectly the damaged portion of the door jamb. Mrs. Sadler then found that the contents of the dresser drawers in her dressing room had been rumpled and looked like they had been ransacked. The next day Mrs. Sadler discovered that an

---

[1]She had left the door locked and the lights out a few hours previously.

inexpensive pair of binoculars she used to watch birds, as well as two bottles of shaving cologne her late husband had used, were both missing.

Appellant claims that neither the paraffin nor the testimony regarding the screwdriver should have been admitted in evidence because these items were obtained by an unreasonable search and seizure made without probable cause. We do not agree. ■ The police had probable cause to make a warrantless arrest of appellant for burglary on the basis of what Mrs. Sadler had told them and appellant's failure to come to the door of the manager's apartment until his presence, in the dark, was discovered by the police. (Pen. Code, § 836, subd. 3) ; *People* v. *Talley*, 65 Cal.2d 830, 835-837 [56 Cal.Rptr. 492, 423 P.2d 564] ; *People* v. *Lewis*, 240 Cal.App.2d 546, 549-551 [49 Cal.Rptr. 579].) ■ A search of the person of an arrestee and of the immediate premises upon which he is arrested is a lawful search. (*People* v. *Ruiz*, 196 Cal.App.2d 695, 701 [16 Cal.Rptr. 855], cert. den. 370 U.S. 954 [8 L.Ed. 2d 819, 82 S.Ct. 1604].)

■ Appellant next contends that the evidence in support of his conviction of burglary was insubstantial. Among other things, burglary is the entry of any apartment with the intent to commit grand or petit larceny. (Pen. Code, § 459.) Without repeating all the relevant evidence summarized above, we note that appellant was found in Mrs. Sadler's apartment which had been left locked. The drawers of Mrs. Sadler's dresser had been ransacked and appellant was first seen in the doorway of the dressing room; two pieces of paraffin from the apartment were found on appellant's person at the time of his arrest. The evidence in support of appellant's conviction of burglary was substantial.

■ With respect to the instructions, appellant's first claim is without merit. He contends that the jury should have been instructed, as requested by defense counsel, that if he committed any burglary at all it had to be of the second degree. But it was sufficiently established that the burglary of Mrs. Sadler's apartment occurred in the nighttime and any such burglary is expressly one of first degree. (Pen. Code, § 460.)

■ Appellant's second objection to the instructions presents more difficulty. The trial court gave a modified version of CALJIC 235 reading as follows: "The mere fact that a person was in possession of stolen property soon after it was taken is not enough to justify his conviction of theft. It is,

however, a circumstance to be considered in connection with other evidence. To warrant a finding of guilty there must be proof of other circumstances tending of themselves to establish guilt. [If a defendant has a reasonable opportunity to show that his possession of stolen property was honestly acquired but refuses or fails to do so, this is a circumstance that tends to show his guilt.]'' Defense counsel strenuously and repeatedly objected to the last sentence of this instruction.[2]

In including this sentence the trial court relied upon *People v. De Leon,* 236 Cal.App.2d 530, 533-534, 539-540 [46 Cal. Rptr. 241], which held that the sentence did not violate the rule announced in *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed. 2d 106, 85 S.Ct. 1229]. However in *People* v. *Moore,* 239 Cal. App.2d 70, 72-74 [48 Cal.Rptr. 475], the exact contrary was held without reference to the prior *De Leon* holding.

The Attorney General argues that the *De Leon* interpretation of the effect of *Griffin* upon this instruction is the correct one because at least three different federal Courts of Appeals have upheld, since *Griffin,* an analogous instruction in federal narcotics cases.[3]

These federal cases have chosen to rely upon *United States* v. *Gainey,* 380 U.S. 63 [13 L.Ed.2d 658, 85 S.Ct. 754] decided some two months prior to *Griffin.* In *Gainey* the United States Supreme Court upheld the constitutionality of a federal statute making the *unexplained* presence of the defendant at the site of an illegal still sufficient evidence of his guilt of carrying on the enterprise of illegal distillation. The court stated that it did not consider that the single phrase in the instructions " 'unless the defendant by the evidence in the case and by proven facts and circumstances explains such presence to the satisfaction of the jury' '' could be fairly understood as a comment upon the defendant's failure to testify although the better practice would have been to eliminate any direct reference to the defendant's failure to explain. (see 380 U.S. at pp. 70-71, 13 L.Ed.2d at p. 664, fn. 7.) It further noted

---

[2]On the basis of the evidence received in this case, the reference in the instruction to a *refusal* by the defendant to show that his possession of stolen property was honestly acquired should have been omitted because there was nothing in the evidence even suggesting such a refusal.

[3]See *United States* v. *Secondino* (2d Cir. 1965) 347 F.2d 725, 727, cert. den. sub. nom. *Massari* v. *United States,* 382 U.S. 931 [15 L.Ed.2d 342, 86 S.Ct. 322]; *United States* v. *Armone* (2d Cir. 1966) 363 F.2d 385, 391-393; *Brown* v. *United States* (9th Cir. 1966) 370 F.2d 874, 875-876, cert. den., 386 U.S. 1039 [18 L.Ed.2d 605, 87 S.Ct. 1494]; *United States* v. *Gulley* (6th Cir. 1967) 374 F.2d 55, 60.

that "the judge's overall reference was carefully directed to *the evidence as a whole*, with neither allusion nor innuendo based on the defendant's decision not to take the stand." (Italics added.) (380 U.S. at p. 71, 13 L.Ed.2d at pp. 664-665.) The unanimous position of these federal courts would seem to be based essentially upon the circumstance that the federal narcotics statutes involved in these cases parallel the federal liquor statute in *Gainey* in making the *unexplained* possession of the illegal narcotic by the defendant sufficient evidence of his guilt.

Likewise in reliance upon *Gainey*, *De Leon* took the view that the sentence under attack is not a comment upon the defendant's failure to testify since the defendant may show that his possession of the stolen property was honestly acquired by means other than his own testimony, such as the testimony of the person from whom he received it, or by other explanatory evidence. The word "show" in our instruction was likened to the word "explain" in the charge approved in *Gainey*. (236 Cal.App.2d at pp. 533-534.) But *Moore* expressly refused to follow *Gainey* as inapplicable to its facts. (239 Cal.App.2d at pp. 72-73.)

On the basis of *Moore* and the rationale of *People* v. *Cockrell*, 63 Cal.2d 659, 669-670 [47 Cal.Rptr. 788, 408 P.2d 116], the CALJIC Committee of the Superior Court of Los Angeles County has revised CALJIC Nos. 203 and 235 by deleting the sentence under attack. (CALJIC 1967 Cumulative Pocket Part, pp. 91, 102.) We believe that in so doing the committee interpreted *Griffin* correctly and that the direction to the jury in the sentence involved constitutes an *indirect* and proscribed comment on a defendant's exercise of his constitutional privilege against compulsory self-incrimination. The sentence violates this privilege by improperly drawing attention both to the defendant's failure to take the stand and to the absence of any explanation by defendant outside of the courtroom and in each situation suggests to the jury that it may take the defendant's silence as a circumstance tending to show guilt. *Griffin* v. *California, supra,* and *People* v. *Moore, supra,* proscribe the former and *People* v. *Cockrell, supra,* proscribes the latter.[4]

---

[4] Cf. Note, *The Constitutionality of Evidence Code Section 413 in Criminal Cases,* 18 Hastings L.J. 198 (1966).

There appears to be a split of authority among states which have applied their own no comment rules in circumstances such as these. (See Annot., 94 A.L.R. 701.) Compare also the instructions in Mathes &

It is true that, on its facts, *Griffin* prohibits only *direct* comment focused upon a defendant's failure to testify and, as suggested in part in *De Leon*, a defendant may show his honest acquisition of stolen property by means other than his own words, whether they be offered in or out of the court-room. But in reality, we believe that upon hearing the sentence in question the attention of the average juror will be drawn thereby to the defendant's silence upon this point, both in and out of the courtroom, and the juror will conclude that he has been directed to consider such silence as a circumstance tending to show the defendant's guilt. Solemnizing in an instruction by the court what the jurors may nevertheless consider spontaneously penalizes a defendant's exercise of his privilege against compulsory self-incrimination and is therefore prohibited. (*Griffin* v. *California, supra,* 380 U.S. 609, 614-615, 14 L.Ed.2d 106, 109-110; *People* v. *Cockrell, supra,* 63 Cal.2d 659, 669-670.)[5]

Under *Chapman* v. *California,* 368 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824], we must reverse because of this federal constitutional error unless we conclude that the People have proven to us beyond a reasonable doubt that this error did not contribute to the verdict against appellant. It is contended that the trial court's instruction to the jury "that appellant had the constitutional right not to take the stand"[6] alleviated any prejudicial effect of the improper comment. To the contrary, since the trial court failed to instruct the jury that it must neither consider nor draw any inference of appellant's guilt from his exercise of his consti-

Devit, Federal Jury Practice and Instructions: Civil and Criminal (1965) §§ 10.10, 10.11, pp. 131-134, and U.S. Court of Appeals for the Seventh Circuit, Manual on Jury Instructions in Federal Criminal Cases (1965) §§ 20.06, 22.04, 23.05, pp. 280, 295, 304.

[5]In *Miranda* v. *Arizona,* 384 U.S. 436, 468 [16 L.Ed.2d 694, 720, 86 S.Ct. 1602, 10 A.L.R.3d 974], fn. 37, the Supreme Court states: "[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. . . ."

[6]The court gave, on its own motion and without objection, the following instruction regarding appellant's failure to testify in lieu of current CALJIC 51: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. The People cannot call the defendant as a witness. Therefore the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. The fact that a defendant does not testify on his own behalf does not relieve the prosecution of its burden of proving every essential element of the crime, and the guilt of the defendant beyond a reasonable doubt." The court omitted the language in current CALJIC 51: "You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way."

tutional privilege against compulsory self-incrimination, the instruction merely drew further attention to appellant's exercise of this privilege and, coupled with the prior, improper comment, further invited the jury to draw an adverse inference from appellant's conduct in this respect. (Cf. *People* v. *Molano*, 253 Cal.App.2d 841, 846-847 [61 Cal.Rptr. 821, 18 A.L.R.3d 1328], hear den.; *People* v. *Brown*, 253 Cal. App.2d 820, 830 [61 Cal.Rptr. 368]; hear. den.; *People* v. *Mason*, 259 Cal.App.2d 30, 39-41 [66 Cal.Rptr. 601], hear. den. April 10, 1968.

Since the jury in this case deliberated from 9:12 a.m. to 4:15 p.m. following a trial of less than a day and a half at which only three witnesses testified and at which the only issue was whether appellant was guilty of burglary of the first degree, we cannot conclude that the error was harmless beyond a reasonable doubt.

The judgment is reversed.

Moss, J., concurred.

FRAMPTON, J. pro tem.*—I dissent. In my opinion the criticized instruction to the effect that possession of stolen property soon after it was taken, in the absence of a showing by a defendant that such possession was honestly acquired, is a circumstance tending to show guilt, does not compel a defendant to testify against himself as proscribed by article I, section 13 of the California Constitution, and it does not violate Amendment Five to the United States Constitution. It is my opinion that the question was properly determined adversely to the appellant's contention herein in *People* v. *De Leon*, 236 Cal.App.2d 530, 533-534 [46 Cal.Rptr. 241].

I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied August 8, 1968. Peters, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.