120 Cal.App.3d 218 (1981)
174 Cal. Rptr. 557
In re D.M.G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
D.M.G., Defendant and Appellant.
Docket No. 5719.
Court of Appeals of California, Fifth District.
June 9, 1981.
*220 COUNSEL
Howard J. Berman, under appointment by the Court of Appeal, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney *221 General, William George Prahl and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
EVANS, J.[*]
This case arose out of hearings in the juvenile court wherein the judge of the juvenile court found that appellant (D.M.G.) came within Welfare and Institutions Code section 602 in that she had violated the following provisions of the Welfare and Institutions Code, Vehicle Code and Penal Code:
Escape from the custody of a probation officer (Welf. & Inst. Code, § 871);[1] auto theft (Veh. Code, § 10851); burglary committed on or about December 23, 1979 (Pen. Code, § 459); arson of a dwelling (Pen. Code, § 447a); attempted robbery and use of a firearm during the commission thereof (Pen. Code, §§ 664/211 and 12022.5).[2]
The court committed D.M.G. to the California Youth Authority for a period of nine years and four months.
She appeals from this judgment.

FACTS

The Zaccaro Burglary and Arson
During the Christmas holidays, Becky Younger (Younger) was watching Gilbert Zaccaro's (Zaccaro) house located at 425 Georgetown in Turlock. On December 23, 1979, at 10 p.m., Younger went to the Zaccaro residence and discovered the front window by the door (the *222 door had paneled windows) was broken. Younger examined the interior of the house and found that guns in a dresser were gone.
At about 11 p.m., Officer Van Vooren (Van Vooren) arrived at the Zaccaro residence to investigate an alleged burglary and arson. Fire Marshal Richard Lutz also investigated the arson and determined that the fire was incendiary in nature. A two-liter Coca-Cola bottle containing gasoline was found sitting in the living room.[3]
Zaccaro, an officer with the Turlock Police Department, returned home on December 24 and discovered that he was missing two .357 magnum revolvers, a .45 automatic, his duty leather, some stereo tapes, a couple of pocket knives and some handcuffs.
In the late afternoon hours of December 27, Zaccaro went by 525 Georgetown where a search warrant was being executed. There, Zaccaro found his keys, duty leather, some pocket knives, stereo tapes and his .45 caliber automatic.[4]
The house at 525 Georgetown was the residence of a juvenile, Pamela O. (Pam). Eddie Mesa, an acquaintance of D.M.G., testified that D.M.G. was staying with Pam in December of 1979. Residents in the neighborhood testified that in the morning and evening hours during the period of December 23 to 27 they saw D.M.G. coming and going from the residence at 525 Georgetown. Further, D.M.G.'s mother testified that D.M.G. was not living with her in December of 1979.

The Car Theft
On December 27, 1979, Jack Divanian (Divanian), the owner of a dark, olive-green 1969 Pontiac Grand Prix (license XMB 906), parked and left his car at the Divine Gardens area in Turlock from where it was stolen. Divanian identified D.M.G. as one of the people who stole his car. When Divanian got his car back there was a bullet hole in it.

*223 The Attempted Robbery

On December 27, 1979, Michael John Spickerman (Spickerman) was employed as a service station attendant at Gas and Save. At approximately 8 p.m. Spickerman went to service a dark green Grand Prix (he thought the car was about a 1970 model). The sedan pulled up a little ahead of the "dog house" (the till) which is located at the center of the pumps. There were two girls in the car and Spickerman testified one of them was wearing a dark beanie cap.
Spickerman walked up to the driver's side and asked if he could be of help; he then saw a gun drawn from the left side and up and across the body of the driver; the gun was fired and Spickerman ran.
Spickerman did not hear anything from the occupants of the car and he could not identify the perpetrators.
The car rapidly left; it was burning rubber and had its lights off.

The Vehicle Search
Shortly after 8 p.m. on December 27, 1979, Officer Donald Maddox with the Merced Police Department went to Merced Medical Center. He encountered D.M.G., who said "she had shot herself accidentally."[5] Officer Terry Ming (Ming) also went to the medical center as there had been a report of a gunshot wound to D.M.G.
Ming saw Pam in the hallway and D.M.G. on a gurney in the emergency ward. Ming contacted Pam to ascertain how the gunshot wound occurred and where the gunshot took place.
Ming then went with Pam to inspect the vehicle Pam had come in. Hospital personnel had informed Ming that the "companion" who was with D.M.G. could possibly provide some information regarding the incident.
The car was a dark green Pontiac Grand Prix, license XMB 906. Ming asked Pam to point out or show him the vehicle. His purpose in going out to the vehicle was that Pam had informed him that the weapon was inside the car. Ming intended to seize the gun for safekeeping *224 until he could determine if a violation had been committed (i.e., carrying a loaded firearm within the city limits).
Ming asked Pam if she had the keys to the vehicle and she said yes. He then asked: "Would you open the vehicle[?]" Ming asked Pam to do this because she said the gun was in the vehicle. Pam followed Ming's "request" and opened the door although she had not made any verbal assent to his "request." Ming did not tell Pam that she had a right to refuse to open the door. The officer thought Pam was approximately 13 to 17 years old.
Ming then observed the butt of a weapon in plain sight. He retrieved the weapon and discovered it was loaded although one shell was expended and one was a misfire. Ming also found a bullet hole in the vehicle.
Ming checked to see if the gun and vehicle were stolen and received a report that they were. The gun was one of the guns that had been stolen from the Zaccaro house. Ming then placed D.M.G. and Pam under arrest. After determining the vehicle was stolen, Ming searched the vehicle and found a blue stocking cap in plain sight.

DISCUSSION

WHETHER THE GUN AND THE CAP WERE LAWFULLY SEIZED
(1a) Appellant, relying on People v. Fields (1979) 95 Cal. App.3d 972 [157 Cal. Rptr. 578], contends that there was no express consent to enter the car, therefore, the warrantless seizure of the gun and cap was unlawful. We disagree.[6]
At the time of the alleged search Pam possessed the keys to the car. Although she did not make any verbal assent Pam impliedly gave her consent to Officer Ming to enter the vehicle. After Pam pointed out the vehicle, Ming asked Pam if she had the keys to the car and she said yes. Ming asked, "Would you open the vehicle[?]" He asked her to do this *225 because Pam had said the gun was in the vehicle. Pam followed Ming's "request" and opened the car door.[7]
As stated in People v. Harrington (1970) 2 Cal.3d 991, 995 [88 Cal. Rptr. 161, 471 P.2d 961], certiorari denied 402 U.S. 923 [28 L.Ed.2d 662, 91 S.Ct. 1384]: "Contrary to defendants' contention, a consent to enter may be expressed by actions as well as words. (People v. Baca (1961) 198 Cal. App.2d 391, 396 [17 Cal. Rptr. 779]; People v. Yancy (1961) 196 Cal. App.2d 665, 667 [16 Cal. Rptr. 766].)"
(2) It is well settled that although the People have the burden to justify a warrantless search (People v. Hill (1974) 12 Cal.3d 731, 747 [117 Cal. Rptr. 393, 528 P.2d 1], disapproved on another point in People v. De Vaughn (1977) 18 Cal.3d 889, 896 [135 Cal. Rptr. 786, 558 P.2d 872]) consent constitutes an exception to the warrant requirement. (People v. James, supra, 19 Cal.3d 99, 106.) However, the People have the burden of proving by a preponderance of the evidence that the defendant's "manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority." (Ibid.) In every case, the voluntariness of consent is "`a question of fact to be determined in the light of all the circumstances.'" (Ibid.)
(3) In reviewing the resolution of the issue, the substantial evidence test applies. (People v. Superior Court (Keithley) (1975) 13 Cal.3d 406, 410 [118 Cal. Rptr. 617, 530 P.2d 585]; People v. James, supra, 19 Cal.3d 99, 107.)
(1b) Appellant's reliance on the case of People v. Fields, supra, 95 Cal. App.3d 972 is misplaced. Fields held that a warrantless search of a car trunk could not be justified on the basis of probable cause or the consent of a passenger in the subject vehicle. (Id., at pp. 976-977.) In regard to the consent issue, the court reasoned: "When the police `ask' someone to perform an act which facilitates their access, as distinguished from asking permission to search, it cannot be said there has been no implicit assertion of authority. Especially is that so when one's companion is suspected of a robbery and the police have shown their weapons. The importance of asking permission, as an indicia of voluntariness, was explained in People v. James (1977) 19 Cal.3d 99, 116 *226 [137 Cal. Rptr. 447, 561 P.2d 1135]: `"The mere asking of permission to enter and make a search carries with it the implication that the person can withhold permission for such an entry or search."' If one merely asks, instead of asking permission, the essential implication is not carried." (Id., at p. 976; italics in original.)
People v. Fields, supra, is distinguishable on the facts and the law. First, unlike Fields, the officer here did not have his gun drawn nor did Ming suspect that Pam was involved in the recent burglary, attempted robbery and car theft. Next, we do not read Fields as holding that in every case a condition precedent to a valid consent search is a warning of the right to refuse permission. While such a warning is certainly advisable and is a fact to be considered, it is not required. (People v. James, supra, 19 Cal.3d 99, 118; see also fn. 7, ante.)
Third, notwithstanding appellant's intimations to the contrary, Fields does not preclude a third party passenger from validly consenting to a search. Moreover, it has been held that a joint owner and user may give consent to have a vehicle searched. (People v. Amadio (1971) 22 Cal. App.3d 7, 14 [98 Cal. Rptr. 909].) Certainly, if a joint user and owner of a car may consent, an individual in possession of keys to a stolen vehicle can validly authorize a search without first obtaining permission from her accomplice.
Further, under the facts of this case there was no demand or claim of right to proceed. (People v. James, supra, 19 Cal.3d 99, 113.) As noted ante, Pam had told Officer Ming that there was a gun in the car and Ming knew that there had just been a shooting. Ming could thus infer that the gun was loaded. Instead of merely entering the car and searching for the gun, Ming quite properly asked Pam to open the door to the vehicle. Under these circumstances Ming's "request" did not amount to coercion.
We also note that there may have existed exigent circumstances in this case which justified the warrantless search of the vehicle. (See People v. Martinez (1981) 118 Cal. App.3d 624 [173 Cal. Rptr. 554].) However, we need not reach this point; as an appellate court we "cannot invoke a new theory based upon the premise that the arresting officer in making the search could have acted reasonably upon a particular ground when the prosecution has failed to make a factual showing at the original hearing that the arresting officer did act upon *227 that ground." (Mestas v. Superior Court (1972) 7 Cal.3d 537, 542 [102 Cal. Rptr. 729, 498 P.2d 977]; italics in original.)
We conclude that there is substantial evidence to support the trial court's implied finding of consent. Thus, the gun and cap were lawfully seized.

WHETHER THERE IS SUBSTANTIAL EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING THAT APPELLANT COMMITTED THE ZACCARO BURGLARY AND ARSON, AND THE ATTEMPTED ROBBERY
D.M.G. contends that there is insufficient evidence to support the juvenile court's finding that she committed the burglary, arson and attempted robbery. We agree as to the burglary and arson counts; however, we conclude that the evidence is sufficient to sustain the attempted robbery finding. (In re Frederick G. (1979) 96 Cal. App.3d 353, 364-365 [157 Cal. Rptr. 769]; People v. Johnson (1980) 26 Cal.3d 557, 576-577 [162 Cal. Rptr. 431, 606 P.2d 738].)
(4) Regarding the burglary charge, D.M.G. contends that the evidence is insufficient as there is no evidence to place her at the scene.
Respondent argues that under the authority of People v. Harris (1968) 266 Cal. App.2d 426 [72 Cal. Rptr. 423] and People v. De Leon (1965) 236 Cal. App.2d 530 [46 Cal. Rptr. 241], "Appellant had the gun in her possession just four days after the burglary and arson of the Zaccaro residence. She did not offer any evidence to show that she had honestly obtained the gun. Therefore, the court's finding as to the burglary and the arson was sufficiently supported by the evidence."
Evidence supporting a conviction for burglary may be based entirely upon circumstantial evidence. (People v. Jordan (1962) 204 Cal. App.2d 782, 786 [22 Cal. Rptr. 731]; People v. Banks (1976) 62 Cal. App.3d 38, 42 [132 Cal. Rptr. 751].)
However, "[p]ossession alone of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary. There must be corroborating evidence of acts, conduct, or declarations of the accused tending to show his guilt." (People v. Citrino (1956) 46 Cal.2d 284, 288 [294 P.2d 32].)
*228 In People v. Harris, supra, 266 Cal. App.2d 426, 427-428, this court stated the rule upon which respondent relies: "While mere unexplained possession of stolen property is not alone sufficient to justify conviction of burglary [citations], it is well established that the possession of recently stolen property is incriminating and in such circumstances there need be only slight corroboration tending to show a defendant's guilt to warrant conviction [citations]. In this connection, the failure of the defendant to establish that he had honestly obtained the property in question is itself a strong circumstance tending to prove his guilt."
In People v. De Leon, supra, 236 Cal. App.2d 530 the court rejected defendant's argument that the above rule forces him to testify. "While the rule requires that defendant either `show' that his possession of recently stolen property was honestly obtained, or have his failure to do so be considered a strong circumstance tending to show his guilt, it does not compel him to take the stand to explain his possession. He may `show' that possession was honestly acquired by producing as a witness the person from whom he received the stolen property, if such a person exists, or by any other evidence that may explain it. [Citation.] Here defendant put on no defense  he offered no evidence to show how or under what circumstances he came into possession of the Pandolfi jewelry, nor did he testify. This is analogous to the effect of two federal statutes held to be constitutional in United States v. Gainey, 380 U.S. 63 [85 S.Ct. 754, 13 L.Ed.2d 658]." (Id., at p. 534.)
Despite invoking the "failure to honestly explain" rule (hereinafter, rule), it is noteworthy that in both People v. Harris, supra, and People v. De Leon, supra, there existed independent corroboration to sustain the burglary convictions. Inasmuch as there was such evidence in those cases any mention and discussion of the rule is dicta. Nevertheless, we think it is necessary to discuss the deficiencies of the Harris-De Leon rule.
In the first instance, a defendant who is apprehended with recently stolen property must either offer evidence of honest acquisition or risk a conviction for burglary. In a given case the rule could force a defendant to waive his privilege against self-incrimination. For instance, a defendant who failed to offer any evidence of honest acquisition and instead chose silence, could be convicted for burglary on the basis of that silence and possession of the recently stolen property. Such a result is clearly at odds with the United States Supreme Court's interpretation of the Fifth Amendment in Griffin v. California (1965) 380 U.S. 609, *229 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229, 1233], which holds that the Fifth Amendment forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.
Further, the court in People v. De Leon, supra, 236 Cal. App.2d 530, completely disregards the presumption of innocence and the People's burden of proof in a criminal case in asserting that the failure-to-explain rule does not force the defendant to testify. By stating that the defendant need not testify (i.e., "[h]e may `show' that possession was honestly acquired by producing as a witness the person from whom he received the stolen property, ..., or by any other evidence that may explain it."), the court simply begs the question. (236 Cal. App.2d at p. 534.) Under De Leon, once the People establish that the defendant is in possession of recently stolen property, the defendant then has the burden to either explain his honest possession and forego his Fifth Amendment privilege, or put on evidence through a third party of how defendant obtained possession. The latter would appear to effectively negate the presumption of innocence and relieve the People of the burden of proving every element of the crime inasmuch as the defendant is forced to come forward with evidence.
For the reasons given, ante, we question the rationale of the De Leon and Harris courts and seriously question whether the dicta in those cases should be followed. In addition, those cases are factually distinguishable. Unlike the instant case, in both Harris and De Leon there was independent corroboration to sustain the convictions.[8]
*230 In this regard, it is significant that respondent does not point to any corroborating evidence other than the failure to explain and possession of the gun to sustain the trial court's true finding on the burglary charge. Further, our review of the record reveals a total absence of any physical evidence, witnesses, statements by the minor or evidence of a sale of the stolen property at a reduced price, etc., which could sustain the trial court's true finding on the charge.
In short, the only evidence linking D.M.G. to the burglary is the joint possession of one of Zaccaro's guns. Clearly, this is insufficient to sustain the burglary charge. (People v. Johnson, supra, 26 Cal.3d 557, 576-577 [162 Cal. Rptr. 431, 606 P.2d 738]; In re Frederick G., supra, 96 Cal. App.3d 353, 364-365 [157 Cal. Rptr. 769].)
(5) Regarding the arson count, the respondent does not really discuss the evidence except to argue that there was somehow sufficient evidence under People v. Harris, supra, 266 Cal. App.2d 426, and People v. De Leon, supra, 236 Cal. App.2d 530.
Although there is evidence that the fire was incendiary, there is no proof of motive evidenced by a threat, possession of inflammatory materials, prior presence in the Zaccaro residence or any other evidence linking appellant with the arson. Although there may have been an arson, there is insufficient evidence that appellant was the perpetrator. (In re Frederick G., supra, 96 Cal. App.3d 353, 367; People v. Beagle (1972) 6 Cal.3d 441, 449-450 [99 Cal. Rptr. 313, 492 P.2d 1] [summarizing the law regarding the sufficiency of evidence in arson cases].)
(6) The evidence supporting the attempted robbery count is much more persuasive. Although it is true that Spickerman, the victim, could not identify D.M.G. as the perpetrator, there is other evidence linking her with the attempted robbery.
*231 At the outset there can be no doubt that a robbery was attempted. The perpetrators drove up next to the till, did not respond when asked by the attendant if they needed help but instead drew a gun and, after bumbling the robbery, sped away with the car lights off, apparently to avoid detection.
The evidence linking D.M.G. with the attempted robbery is circumstantial. The attempted robbery was committed at about 8 p.m. on December 27, 1979, by two girls in a dark green Grand Prix. The description of the car matched the car that was stolen and the one that was searched at the hospital within an hour later. Further, the proximity in time between the attempted robbery, the gun discharge, the discovery of the cap, and D.M.G.'s presence at the hospital with a gunshot wound could lead a rational trier of fact to conclude that D.M.G. committed the crime.
The evidence was sufficient to sustain the attempted robbery finding. (In re Frederick G., supra, 96 Cal. App.3d 353, 367.)
In conclusion, we conclude that the evidence is insufficient on the burglary and the arson counts; however, there is sufficient evidence on the attempted robbery.

WHETHER THE FAILURE TO MAKE A TIMELY RETURN OF THE SEARCH WARRANT REQUIRES REVERSAL
Penal Code section 1534 provides in relevant part: "(a) A search warrant shall be executed and returned within 10 days after date of issuance. A warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made. After the expiration of 10 days, the warrant, unless executed, is void."
D.M.G. contends that the search warrant was not timely returned and that a reversal is required. No authority is cited in the claim for reversal, nor does D.M.G. allege any prejudice from the late return, if indeed there was a late return.
D.M.G.'s contention is without merit.
In the instant case Officer Van Vooren testified that on December 27, 1979, he executed and served the search warrant for the search at *232 525 Georgetown. He also testified that he made a return on the warrant on December 31.
Further, an examination of the return on the warrant indicates it was indeed returned on December 31, 1979, well within the statutory period.
The order sustaining the petition on the attempted robbery and firearm use allegation, vehicle theft and escape is affirmed, and that part of the order sustaining the petition on the burglary and arson is reversed. The order of commitment to the California Youth Authority is vacated and the matter is remanded to the juvenile court for a further disposition hearing in accordance with this opinion.
Hopper, Acting P.J., and Andreen, J., concurred.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] Appellant entered a plea of guilty to the charged escape but denied all other allegations against her.
[2] The court found that there was insufficient evidence of another burglary (Pen. Code, § 459) alleged to have been committed on December 25, 1979. A third charge of burglary (Pen. Code, § 459) and a violation of a condition of probation were dismissed in the interest of justice, while a charge of discharging a weapon in an inhabited dwelling (Pen. Code, § 246) was dismissed.
[3] Although the bottle was apparently dusted for fingerprints, there was no testimony whether the prints belonged to D.M.G.
[4] Officer Van Vooren, who was executing the search warrant, found some handcuffs in one of the bedrooms with the markings "JH number 5"; the cuffs were not in proper working order and appeared to have been cut. It was stipulated that the cuffs were from the Stanislaus County Juvenile Hall and D.M.G. escaped on November 23 with those cuffs on.
[5] D.M.G. had a gunshot wound in her upper left thigh.
[6] We note that although the car was stolen respondent nevertheless does not raise the issue of whether D.M.G. lacks standing to raise the Fourth Amendment claim. (See People v. Hackett (1981) 115 Cal. App.3d 592 [171 Cal. Rptr. 320].)
[7] Although Ming testified that Pam was approximately 13 to 17 years old, we know of no cases which require an officer to inform a citizen of a right of refusal in order to have a valid consent. (People v. James (1977) 19 Cal.3d 99, 115, 118 [137 Cal. Rptr. 447, 561 P.2d 1135].)
[8] We note that the Supreme Court has referred to the failure-to-honestly-explain rule on two separate occasions. (See People v. McFarland (1962) 58 Cal.2d 748, 754 [26 Cal. Rptr. 473, 376 P.2d 449]; People v. Citrino, supra, 46 Cal.2d 284, 288-289.) However, neither of those cases invoked the rule as the basis for sustaining burglary convictions. People v. McFarland, supra, was concerned in part with the validity of a rule permitting an inference of guilt in a situation involving pretrial silence upon questioning by the police. There, defendant was charged with multiple burglaries and was found in possession of the recently stolen property. Defendant failed to explain to police his possession of property involved in one of the counts and this evidence was sufficient to sustain a conviction on one of the burglary counts as his silence could reflect a consciousness of guilt. (Id., at p. 758.)

In People v. Citrino, supra, 46 Cal.2d 284, 289, there was sufficient corroborative evidence (including false statements and a suspect alibi) other than a mere failure to honestly explain possession which could sustain the burglary convictions.
However, in People v. Wells (1960) 187 Cal. App.2d 324 [9 Cal. Rptr. 384] the court relied in part on defendant's postarrest silence to sustain a burglary conviction. There, defendant and two others were stopped by police officers for a traffic violation less than one hour after a burglary. One officer saw some articles in the back seat covered with a navy blanket, including a sander bearing the word "Skill." The officer became suspicious and ran a check and discovered that there had been a burglary. By this time defendant's cohorts had fled and the officer searched the car and found the stolen property. The court held that the circumstances of the two "conspirators" fleeing from which an inference of guilty knowledge could be imputed to defendant and defendant's failure to explain his possession was sufficient evidence to sustain the burglary conviction. (Id., at pp. 331-332.)
However, for the reasons stated in this opinion, we do not follow People v. Wells, supra, to the extent that it may rely on a defendant's failure to explain possession as a corroborative circumstance to sustain a burglary conviction.